## SCOTT v. WHITTEMORE.

The liability of a receiptor upon his contract for property attached, is fixed by not delivering the property when it is demanded. A refusal to deliver is not necessary.

The officer may withdraw an offer made by him to receive the property on a subsequent day, at any time before it is accepted and the property delivered.

It is not material that the receiptor had the property in his possession, so that he could deliver it on demand, if he did not, in fact, deliver it.

A receipt, given to an officer for one hundred bushels of rye, valued at $100, cannot be explained, by parol evidence, to signify one hundred bushels of rye *unthreshed*.

It is no defence to an action upon a receipt, that the property belonged to a third person, or was under a mortgage to a third person, unless it is shown that the property was restored to such third person, so as to exonerate the officer.

An attachment, in common form, of property under a mortgage, is not void, though it is voidable at the election of the mortgagee.

A receiptor, who has stipulated to keep property attached without expense, cannot justify himself for not delivering the hay attached, on the ground that it has been consumed by the stock attached.

An officer is not bound to accept from a receiptor a different article from that attached, though it be of the same quality.

A receiptor cannot discharge himself from his contract to keep and return the property attached, by a notice that he will return the property on a given day, unless the contract contains a provision for that purpose.

If a receiptor has allowed the property attached to remain in the possession of the debtor, the ordinary rule of damages, in an action by the officer, is the amount of the judgment and interest, and his fees and poundage, if the value of the property exceeds that amount.

ASSUMPSIT, upon two receipts for property attached in the following form:

"Sept. 16th, 1851. Received of James Scott, deputy sheriff of the county of Hillsborough, for safe keeping, the goods and chattels following, attached by him as the property of John Carkin, in an action in favor of T. Moore, returnable at the court of common pleas for said county, October term, A. D. 1851, to wit, 2 horses $200, 1 buggy

chaise $80, &c., (enumerating a large number of articles, those of each class being separately valued, thus 100 bushels rye $100 ; 100 bushels oats $42 ; 75 tons of hay 600 ; 3 pairs of oxen $240, &c.,) all of the value of forty-three hundred and forty-seven dollars, and I hereby agree to deliver the same to said Scott, or his order, on demand, in good order and condition as the same now are in, free from all charge or expense to said Scott.

. Signed,            AMOS WHITTEMORE."

" Rec'd of James Scott, D. sheriff, certain articles of personal property, attached on a writ in favor of T. Moore against John Carkin, returnable Oct. term, 1851, to wit, 4 horses, 4 harnesses, 1 four horse team wagon, 200 casks of powder, all of the value of $800 ; now in consideration aforesaid, I hereby agree to deliver to said James Scott, D. sheriff, the above described personal property on demand, free of expense or damage, or the value thereof in money, to said Scott, on demand. Sept. 16th, 1851.

Signed,            AMOS WHITTEMORE."

The plea was the general issue, with a brief statement that the defendant never refused to deliver any property receipted for, but requested the plaintiff, in writing, to receive it; that a part of the property was, on the 16th of September, 1851, and still is subject to a mortgage to one Henshaw for its value ; that a part of it, to wit, one gig wagon, was not the property of Carkin, but belonged to one George A. Whittemore ; and that three horses, one pair of harnesses and one gig belonged to one Willard S. Carkin. It was alleged in the writ that the property mentioned in both receipts was demanded of the defendant, on the 22d day of December, 1851, and the plaintiff offered evidence to that effect. The property was, at the attachment, in the possession of the debtor, John Carkin, and remained so from the date of the receipt until the demand by the plaintiff. There was evidence that the defendant said he

could not deliver the property then, for Carkin and Willard (his son) were not at home. The defendant then moved for a nonsuit, on the ground that there was no evidence of a refusal to deliver the property, but the motion was overruled by the court.

The defendant then offered evidence that, on the 25th of December, the plaintiff went to Carkin's, and told the defendant he was ready to receive the property. The defendant proposed to go to the barn, and the plaintiff said he was not obliged to go to the barn, or out of the house, but finally went, and the defendant said " here are the horses, the oats and the rye." The plaintiff refused to take the latter, saying he wanted one hundred bushels of each to be measured out to him. The rye and oats were at this time unthreshed, and were so at the time of the attachment. The defendant then proposed to show that the same rye and oats in the straw that were attached, remained there at the time of the demand, and contended that he was bound to deliver only the rye and oats in the straw that were attached, but the court ruled that the evidence was incompetent. At this time the plaintiff, on being requested to go to the powder mill, after this conversation, said to the defendant, " It is evident that you cannot deliver the property, and I am not going to be caught in any trap," and then left the premises. The defendant then offered to prove that on the 6th of August, 1850, many of the articles mentioned in the receipt were mortgaged to one Charles Henshaw, of Boston; that on the 22d of December, 1851, the debt due the mortgagee was $1,748,98; that the debt exceeded the value of the mortgaged property which was included in the receipts, and remained there at the time of the attachment, and the debt was still due. But the court ruled that the defendant could not avail himself of the title of the mortgagee, as an answer to the action, and excluded the evidence.

Judgment was recovered in the action of *Moore* v. *Carkin*, on the 22d of November, 1851, and execution was

issued on the 24th of November for $1,936,40, damages, and $13,68, costs. It appeared that some of the hay was fed out by the defendant to the animals attached, and the defendant proved that on the 14th of November, 1851, he served a notice on the plaintiff, dated on the 13th, that he would deliver the property to him on the 18th, and requesting him to receive it.

This was offered as bearing on his liability for the hay, he contending that he fed it out in consequence of the neglect of the plaintiff to furnish any hay for the animals. It also appeared that the horses and cattle were used by the debtor, more or less, after the date of the receipt.

The defendant contended, and the evidence tended to prove that the hay amounted to 125 tons, and that more than 75 tons remained on hand on the 25th of December.

The defendant also offered evidence that the four horses, four harnesses and the four-horse wagon, mentioned in the second of the above receipts, were all ready for delivery on the 22d of December, and that 200 kegs of powder, of the same quality and put up in the same manner and packages as those attached, were ready to be delivered to the plaintiff on the same day. The kegs of powder, mentioned in the receipt, had been drawn away and sold by the debtor.

He also offered evidence that certain articles, valued in the first of the receipts at $2,416, remained in the same condition as when they were attached, and that he offered to return them on the 25th of December.

W. S. Carkin testified that a buggy wagon, mentioned in the first receipt, valued at $60, belonged to George A. Whittemore, and he had since seen it in his possession.

A verdict was taken for the plaintiff for the sum of $4,648,38, including interest from the time of the demand, upon which it was agreed that judgment should be rendered, or should the verdict be amended, and judgment rendered upon it for such sum as this court should think the plaintiff entitled to recover.

Scott v. Whittemore.

*Morrison & Fitch*, for the defendant.

A part of the property receipted for was mortgaged for its full value, and a portion actually belonged to third persons when attached and receipted for. The defendant contends that he should have been permitted to show the title of the mortgagee and of other persons to portions of the receipted property, as an answer, in part, to this action. *Webber* v. *Harper*, 7 N. H. Rep. 594 ; 13 Mass. Rep. 224.

A receiptor may defend himself against the officer's claim on his receipt, by showing that the goods attached were not the property of the debtor. *Learned* v. *Bryant*, 13 Mass. Rep. 224 ; *Denny* v. *Willard*, 11 Pick. 519 ; *Fisher* v. *Bartlett*, 8 Greenl. 122 ; 4 Mass. Rep. 498.

There was no refusal to deliver the receipted property, and as the defendant came lawfully into the possession of the same, a demand and refusal should have been proved, in order to maintain this action. *Cargill* v. *Webb*, 10 N. H. Rep. 199.

The defendant has a right to a reasonable time in which to make the delivery. The plaintiff should not have postponed his demand until the last moment he could legally make the same, as the property was of such a nature that it could not be delivered the instant the demand was made. When the plaintiff, on the 25th of December, offered to receive, and the defendant offered to deliver the property, and the plaintiff thereupon declined to receive it, we contend this should discharge the defendant from all liability.

The notice of November 14 should also discharge the defendant of his liability as receiptor.

The property, which was specifically valued in the first receipt, should have been accepted by the plaintiff, upon a tender thereof by the defendant, and his refusal to do so discharges the defendant's liability upon that receipt. *Remick* v. *Atkinson*, 11 N. H. Rep. 256 ; *Drown* v. *Smith*, 3 N. H. Rep. 299.

*Atherton & Sawyer,* for the plaintiff.

The defendant attempts to excuse himself from the performance of his agreement, by reason of a part of the property mentioned in said receipts being under a mortgage for its value, and the remainder as belonging to third persons.

The plaintiff answers to this part of the case that there was a special contract to deliver the property in question to the plaintiff, on demand, and that it is the right of the plaintiff to have the contract fulfilled, unless the defendant shows a legal excuse.

1st. The agreement between the officer and receiptor is made for the officer's private use. *Clark* v. *Clough,* 3 Greenl. 361. It is the duty of the receiptor to keep the property, and have it ready to deliver on demand. *Robinson* v. *Mansfield,* 13 Pick. 144; *Remick* v. *Atkinson,* 11 N. H. Rep. 258.

Where an officer attaches property he stands responsible for it, first, to the plaintiff, if he recover judgment; second, to the defendant, if he own the property and recover judgment; and third, to the lawful owner. In either event, the officer will have the right to call the property out of the possession of the receiptor; and even if at the time of the attachment the property did not belong to the debtor, but to a third person, that circumstance alone will not constitute a defence in an action by the officer against the receiptor, for the officer must have possession of the property, in order that he may restore it to such third person, he being the true owner. *Fisher* v. *Bartlett,* 8 Greenl. 124; *Barron* v. *Cobleigh,* 11 N. H. Rep. 562; *Clark* v. *Morse,* 10 N. H. Rep. 238; *Jenny* v. *Rodman,* 16 Mass. Rep. 464.

So long as the officer is accountable to any person for the property, so long should the receiptor be liable to the officer. *Collins* v. *Smith,* 16 Vt. Rep. 9; *Sawyer* v. *Mason,* 1 App. 49.

The receiptor is estopped to deny the attachment, or to set up want of a consideration. *Morrison* v. *Blodgett,* 8 N. H. Rep. 238; *Allen* v. *Butler,* 9 Vt. Rep. 122. The statement

in the receipt of the value of the goods is conclusive upon both parties. *Drown* v. *Smith*, 3 N. H. Rep. 300; *Wakefield* v. *Stedman*, 12 Pick. 562. If, then, matters are conclusive upon the receiptor, why should he not be held to the other part of the agreement, his promise to deliver the same on demand. The promise to deliver on demand is absolute. *Page* v. *Thrall*, 11 Vt. Rep. 230. And in *Drown* v. *Smith*, 3 N. H. Rep. 399, where goods were valued at a gross sum, a tender of a part by the receiptor is not a fulfilment of the agreement, even as to the part tendered, and the sheriff is not bound to receive the part tendered.

This contract makes it the duty of the receiptor to deliver the property to the officer on demand; and if he does not do it, he is liable to the officer for the full value, notwithstanding the debt on which it was attached was much less than the value, unless he has returned the property to the debtor. *Bissell* v. *Huntington*, 2 N. H. Rep. 143; *Whitney* v. *Farwell*, 10 N. H. Rep. 11.

There are cases where the receiptor, in an action by the officer, may set up the defence that the property belonged to a third person, and he has delivered the same to the rightful owner; but in no case reported, so far as we have examined, will it avail the receiptor, in an action on his promise, to set up that the property belonged to a third person, and was not liable to attachment, unless he also show that such lawful owner has had the property delivered to him. The restoration of the property to the lawful owner is the defence. *Fisher* v. *Bartlett*, 8 Greenl. 124; 7 N. H. Rep. 596; 4 Mass. Rep. 498; 13 Mass. Rep. 224; 11 Pick. 519.

In all the cases above cited there had been a delivery of the property to the lawful owner, and so of all other cases where such a defence is set up.

Where the officer has wrongfully attached the goods of a third person, and delivered them to the receiptor, he may defend by showing a delivery to the true owner. *Leonard* v. *Bryant*, 13 Mass. Rep. 224; Story on Bailments 98. But

in such a case, if the property has gone back into the possession of the debtor, and been used by him, the receiptor is estopped to deny the right of the sheriff, or to show title in a third person. It is only when goods have been taken from him by a paramount title, that he can avail himself of that title to defeat the claim of the sheriff. *Phillips* v. *Hall*, 8 Wend. 810. And the weight of authorities goes to show that a receiptor, where there is no fraud or mistake, cannot defend himself upon his promise, by showing property in himself. 9 Vt. Rep. 122 ; 8 N. H., Rep. 238 ; 13 Pick. 144 ; 1 App. 49 ; 12 Pick. 561 ; 15 Pick. 40.

If an officer, having attached a chattel, delivers it to a third person, upon his promise to redeliver it on demand, such person cannot resist the officer's claim on the ground that the chattel was exempted by law from attachment. *Smith* v. *Cudworth*, 24 Pick. 196.

If the receiptor permits the property to go into the hands of the debtor, then the law considers his receipt as, in effect, a contract to pay the demand upon which it is attached. *Whitney* v. *Farwell*, 10 N. H. Rep. 12. By the terms of the receipt, the property was to be returned to the officer ; the receiptor is not a mere servant of the officer, but his undertaking is a security for the debt to the extent of the value of the property. If the receiptor restore the property to the debtor, and permit him to dispose of it, and thereby deprive himself of the power to return it according to the terms of the receipt, then, upon a lawful demand by the officer, he becomes entitled to recover the value of the receiptor. *Clark* v. *Morse*, 10 N. H. Rep. 238.

This case finds that the property attached (and remaining unsold) remained in the hands of the debtor from the date of the receipt to the demand, and was used by the debtor more or less. Now if the doctrine contended for by the plaintiff, and which is supported by authority, is correct, to wit, that a mere title in a third person, without a delivery of the property to him, will not constitute a defence, *a*

*fortiori,* the showing the qualified or mortgage title will not constitute a defence.

2d. Upon the question of a demand and refusal, it should be remembered that the demand was made on the last day prior to the lapse of thirty days after judgment, as the case shows. The plaintiff, in this suit, went to this defendant and made a demand of him for the property mentioned in both receipts. The defendant said he could not deliver the property then. His promise was to deliver it on demand, but he neglected to fulfil his contract. It was his duty to have the property ready to deliver on demand, according to his promise. 10 N. H. Rep. 11; 2 N. H. Rep. 142.

Actions upon such promises are unlike actions for the conversion of property, and the question in this case seems to be, did the defendant fulfil his contract? He had let the property go into the hands of the debtor, and had thereby deprived himself of the power to return it, and it would seem useless for the officer even to make a demand; but had this been an action of trover for the conversion, there being a promise to return the articles on demand, and a failure to do so would constitute sufficient evidence of a conversion. *Durrell* v. *Mosher,* 8 Johns. 347. A part of said property (200 kegs of powder) had been sold, and all the property in the second receipt being valued in gross, the receiptor could not fulfil his promise to return, and upon the demand, on December 22, became liable. Now the attachment would expire on the 22d, and the officer's right of action accrued upon his making a demand, (11 Vt. Rep. 230,) and the sheriff could have commenced this suit the next day, if not not on the 22d. The officer being at Carkins' on the 25th, (three days after the attachment expired,) was an act of supererogation, and he did not relinquish any of his rights acquired on the 22d. It is a principle of law that the acts of the sheriff are to receive the most favorable construction. *Bissell* v. *Huntington,* 2 N. H. Rep. 141. The acts of the

sheriff, on the 25th, show that he did not intend to release the receiptor from his liability, but, on the other hand, guarded against it.

3d. The ruling of the court, in regard to the evidence relating to the rye and the oats, was manifestly correct. The receiptor agreed to deliver 100 bushels of rye, valued at $100, and 100 bushels of oats, valued at $42. Suppose, then, there had been a mere nominal attachment of the rye and the oats, the receiptor is responsible, and cannot defend upon the ground that no such property was attached. *Morrison* v. *Blodgett,* 8 N. H. Rep. 255.

The promise of the receiptor is direct, positive, unconditional and in writing, and parol evidence is inadmissible to contradict or vary it. *George* v. *Harris,* 4 N. H. Rep. 536. The contract cannot be varied, altered or controlled by parol evidence. *Wakefield* v. *Stedman,* 12 Pick. 562; 15 Pick. 42, 437.

The defendant asks to show a different state of things than is disclosed by the receipt. If it is not competent to vary, alter or control, by parol evidence, that part of the receipt relating to the value, relating to the attachment, &c., why should it be relating to quality or kind.

4th. Upon the question relating to the hay, we cite 12 Mass. Rep. 163; 9 Mass. Rep. 535. It is conceded by the defendant that a portion of the hay had been eaten up. Now it was the duty of the defendant to keep the hay for the sheriff, and if he permitted the debtor to sell or use it, the sheriff was under no obligation to receive a part. The plaintiff contends that the liability of the receiptor was fixed on the 22d of December, the day of the demand, and that whatever was done afterwards by the sheriff was done in the most guarded manner, showing that he considered his right of action complete, and did not intend to relinquish it.

5th. It should be remembered, also, that a part of the property, mentioned in the second receipt, was sold, and could not be delivered; and the articles being valued in

Scott *v.* Whittemore.

gross, the sheriff was not under any obligation to receive the remainder, if they had been offered him. 3 N. H. Rep. 299; 11 N. H. Rep. 258.

BELL, J. The first question presented by this case is that relative to the demand by the plaintiff upon the defendant, for the goods included in the receipt. Evidence was offered by the plaintiff tending to show that such a demand was made on the 22d of December, 1851, which was the thirtieth day after the rendition of the judgment; and, as the property is stated to have continued in the possession of the debtor, the last day on which a demand could be effectually made so as to preserve the plaintiff's right of action. None of the property was delivered, and the defendant then said he could not deliver the property at that time, for Carkin and his son were not at home. Upon this evidence, we are bound to understand there was a sufficient demand that the defendant's contract should be performed, and an entire failure to perform it. It was not necessary for him to refuse. It was enough that, when requested to perform his contract, he did not do it. By that neglect and failure the plaintiff's right of action became perfect.

If the reply of the defendant was intended as an excuse for non-performance, it did not, in point of law, constitute any excuse, and there is no evidence tending to show that the plaintiff made any reply to that suggestion. The motion for a nonsuit was then properly refused.

The next question relates to the effect of the proceedings of the parties on the 25th day of December, three days after the plaintiff's time for making a demand had expired. On that day, the plaintiff went to the defendant, at Carkin's, and told him he was ready to receive the property, and there was some conversation as to the horses, oats and rye, in which the parties differed in their understanding of the contract, and the plaintiff, saying it is evident you cannot deliver

the property, and I am not going to be caught in any trap, then went away.

This transaction can only be regarded as an offer still to receive the property, and a proposition not to insist on his legal rights, if the property should be then delivered. It is apparent the offer was not accepted; the property was neither delivered nor promised to be delivered. It was entirely at the option of the plaintiff to withdraw his proposition when he chose, at any time before his terms were complied with.

He had a right to judge from what he saw, as we may judge from what is stated in the case, that it was not in the defendant's power to comply with the plaintiff's offer.

In our view of the case, the question of construction of the receipt for one hundred bushels of rye and one hundred bushels of oats was entirely immaterial, since the plaintiff, by abandoning his attempt to obtain the property, put an end to his proposal, and the rights of neither party depended on that point. Still, we entertain no doubt that the ruling of the court was correct. The contract was entirely clear and unambiguous in its terms, meaning what the plaintiff understood by it, and nothing else; and it is not a point requiring the citation of authorities here, that in such a case no parol evidence can be introduced to control, qualify or explain a written contract.

The defendant offered to prove that many of the articles, included in the receipt, were included in a mortgage to one Henshaw, but the court excluded the evidence, we think correctly. An attachment of goods, subject to a mortgage as the property of the mortgager, is not void; it is, at most, merely voidable at the election of the mortgagee. He may or may not choose to insist on his rights as mortgagee, and thus to avoid the attachment. Until he does so elect, the attachment remains valid, though defeasible. If a receiptor has merely performed his duty as such, and during the time he has continued to hold the property no demand has been

made, he is not subsequently liable to any action at the suit of the mortgagee.

Much less will a receiptor be liable to the mortgagee, who has suffered the property quietly to remain in the hands of the mortgager, as appears to have been the case in this instance.

It would clearly be a perfect defence that the property had been taken from his possession by a mortgagee, or other person having a paramount title ; and it might, perhaps, be sufficient to show that he had been subjected to an action by proper proceedings on the part of such claimant. But as the officer who has attached and taken possession of property is liable not only to the creditor, in case he recovers, for the property required to be applied to the discharge of his judgment, and to the debtor for the overplus, or for the whole, if the creditor fails in his suit; but to all third persons, who have rightful claims upon it, it follows, of course, that his bailee is accountable to him for the entire property committed to him, unless he shows that by giving it up to superior claimants, or suffering it to return to or to remain in possession of the debtor, the officer is relieved from all their claims upon it. If this bailee had appropriated this property to his own use, the officer is entitled to recover its value, to enable him to meet the claims of the creditor, or those of Henshaw or of Carkin.

It appeared that a part of the hay attached was fed by the defendant to the horses attached, but the terms of his contract bind him to keep the horses without expense, and to deliver to the plaintiff all the hay included in the receipt of the plaintiff. There is no pretence, therefore, by the terms of the contract, that the defendant is excused by this use of the hay from returning or accounting for it. But it appears by evidence introduced for the defendant, that on the 14th of November, 1851, he served a notice on the plaintiff, that he would deliver the property to him on the 18th, requesting him to receive it. This notice, the defendant

contends, exonerates him from his contract to keep the property without expense; but we are unable to perceive any legal ground for that idea. This notice was, at most, a request to be relieved from his contract contained in the receipt, which the plaintiff might assent to or not, as he pleased.

It seems to us entirely immaterial, in this case, whether the debtor did or did not use his horses, or whether or not the hay amounted to seventy-five tons on the 25th of December. If it was contended that the horses were impaired by such use, or that the hay was reduced in quantity below the amount receipted for, the proof might have some bearing; but no such points are made by the plaintiff.

The evidence relating to the property embraced in the second receipt, was entirely incompetent. The property was not delivered when the demand of it was made by the plaintiff, and the defendant said he could not then deliver it, for Carkin and his son were absent. It cannot avail him to show that this property was ready to be delivered. It should have been actually delivered, or so offered that the responsibility for its non-delivery would rest upon the plaintiff. If it had been a contract to be performed at a particular day, and the property was ready at the day, and no one came to receive it, it might have had the effect of a tender, but that was not this case.

If the readiness insisted on would have been effectual, still the evidence shows the property included in this receipt was not ready. The chattels enumerated in it were all valued in one sum; they could not, therefore, be delivered in parts; the plaintiff was not bound to receive less than the whole.

The two hundred kegs of powder, named in the receipt, had been drawn away and sold by Carkin, and could not be returned. It makes no difference that the same quantity of powder, of the same quality, and put up in the same manner and packages, were ready to be delivered in its stead.

Scott *v.* Whittemore.

The plaintiff might accept them if he chose; but it was optional with him to do so or not.

It was immaterial, in the view we have taken, that articles, valued in the receipts at $2,416, remained in the same condition as when they were attached, as the defendant offered to prove, and that he offered to return them on the 25th of December. The defendants liability was fixed by the demand on the 22d, and the offer to return a part of the goods on the 25th, was only effectual if accepted.

The amount of the judgment recovered by Moore, in the action in which these attachments were made, was for damages $1,936,40, and costs $13,68. For the amount of these sums and interest from the judgment, the plaintiff is answerable to Moore. To which is to be added the amount of the fees and poundage on the execution, as he is compelled to make the money to pay the execution out of the money he will recover on account of the property attached, and to pay it over to the creditor.

The case finds that " the property was, at the time of the attachment, in the possession of the debtor, John Carkin, and remained so from the date of the receipt until the demand by the plaintiff." The officer is, of course, not liable to Carkin. No evidence shows any demand or claim made upon him on account of any third person, who might have an interest in the property, and he is not liable to any such third person; he is not, therefore, entitled to recover any thing on either of these accounts.

The plaintiff, upon remitting the damages given by the verdict for the excess, may take judgment for $1,950,08, and interest from the date of the judgment, and his fees and poundage.